UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **STATE FARM MUTUAL AUTOMOBILE INSURANCE CO.**, an Illinois Company,<br><br>    Plaintiff,<br>v.<br><br>**McKENNA CLARK**, individually and as Personal Representative of the Estate of Koby Clark,<br><br>    Defendants. | Case No.: 1:21-cv-00385-CRK<br><br>**MEMORANDUM DECISION RE: MOTION FOR SUMMARY JUDGMENT** |

## INTRODUCTION

Before the Court are State Farm Mutual Automobile Insurance Co.'s ("State Farm") and McKenna Clark's[1] ("Defendant") motions for summary judgment, Pl.'s Mot. Summ. J., Jan. 31, 2022, ECF No. 13 ("Pl. Mot."); Def.'s Mot. Summ. J., Jan. 31, 2022, ECF No. 14 ("Def. Mot."), and accompanying memoranda, Memo. in Supp. [Pl. Mot.], Jan. 31, 2022, ECF No. 13-2 ("Pl. Br."); Memo. in Supp. [Def. Mot.], Jan. 31, 2022, ECF No. 14-2 ("Def. Br."). State Farm seeks a declaratory judgment against Defendant stating that State Farm is not obligated to provide uninsured ("UM") or underinsured motorist ("UIM") coverage, further payments, or further indemnify Defendant for any loss arising out of the death of Defendant's husband Koby Clark

---

[1] McKenna Clark appears in this action in her personal capacity and as the Personal Representative of the Estate of Koby Clark.

MEMORANDUM DECISION AND ORDER - 1

under four insurance policies issued by State Farm.[2]  See Compl. for Declaratory J. ¶¶ 18, 20, Prayer for Relief ¶ 1, Aug. 19, 2021, ECF No. 1-2 ("Compl."). State Farm argues the Court may determine as a matter of law that Koby Clark is not an "insured" as defined in the Disputed Policies because he was not a named insured on the Disputed Policies and did not "reside primarily" with James Clark, the first named insured on the Disputed Policies. See Pl. Br. at 4–5, 12–14; Certified Policy Record [067 Policy] at SF000122, 128–29, Jan. 31, 2022, ECF No. 13-5 (declaration page listing James Clark as the first named insured, definitions of "insured" and "resident relative"); Certified Policy Record [075 Policy] at SF000166, SF000172–73, Jan. 31, 2022, ECF No. 13-5 (same); Certified Policy Record [050 Policy] at SF000212, 218–19, Jan. 31, 2022, ECF No. 13-5 (same). Defendant counters that the meaning of the phrase resides primarily is ambiguous and should be construed in Defendant's favor. Def. Br. at 3–5; see Resp. to [Pl. Mot.] at 4–11, Mar. 14, 2022, ECF No. 18 ("Def. Resp."). For the following reasons, the Court grants State Farm's motion for summary judgment and denies Defendant's motion for summary judgment.

---

[2] Although the complaint for declaratory judgment asks the Court to declare that Plaintiff is not liable under four policies—Policy Nos. 073-5966-E01-12 (the "073 Policy") 067-4790-D22-12 (the "067 Policy"), 075-3214-A31-12 (the "075 Policy"), and 050-5647-E26-12 (the "050 Policy"), see Compl. for Declaratory J. ¶¶ 18, 20, Prayer for Relief ¶ 1, Aug. 19, 2021, ECF No. 1-2 ("Compl."), State Farm's motion for summary judgment only seeks relief for the 067 Policy, 075 Policy, and 050 Policy (the "Disputed Policies"). See Pl. Br. at 4 ("[t]he three State Farm insurance policies at issue— [the Disputed Policies] —have identical language"). Plaintiff's request for declaratory judgment for the 073 Policy is abandoned.

**MEMORANDUM DECISION - 2**

## BACKGROUND

State Farm commenced this action by filing a complaint in the District Court of the Third Judicial District of the State of Idaho, in and for the County of Canyon ("Idaho State Court") on August 19, 2021.  Notice of Removal at 1, Sept. 22, 2021, ECF No. 1 ("Removal Notice"); see also Compl. at 1 (electronic filing stamp indicating the complaint was filed in Idaho State Court on August 19, 2021, at 1:13 p.m.).  On September 22, 2021, Defendant timely removed the action to the U.S. District Court for the District of Idaho on the grounds of diversity of citizenship.  Removal Notice; see 28 U.S.C. §§ 1332(a), 1441(a)–(b), 1446 (2018).[3]  On January 31, 2022, the parties filed cross-motions for summary judgment, Pl. Mot.; Def. Mot., and the motions were fully briefed on April 11, 2022.[4]  Pl.'s Resp. to [Def. Mot.], Mar. 14, 2022, ECF No. 17 ("Pl. Resp."); Def. Resp.; Statement Material Facts in Dispute, Mar. 14, 2022, ECF No. 18-1 ("Disputed Facts"); Reply to [Pl. Resp.], Mar. 28, 2022, ECF No. 19 ("Def. Reply"); Reply in Supp. [Pl. Mot.], Mar. 28, 2022, ECF No. 20 ("Pl. Reply"); Resp. to Def.'s Objections; Reply to Resp. to Def.'s Objections.  On July 21, 2022, the Court

---

[3] Subsequent citations to the United States Code are to the 2018 Edition, unless otherwise indicated.

[4] Defendant objects to certain evidence supporting State Farm's motion for summary judgment, arguing the evidence is inadmissible and asks the Court to strike the evidence. Def. Resp. at 12–16. State Farm filed a Response to Defendant's Motion to Strike, arguing that the disputed evidence is admissible. Resp. Def.'s Mot. to Strike, Mar. 28, 2022, ECF No. 21 ("Resp. to Def.'s Objections"). The Court considers State Farm's response, id., and the Defendant's reply, Reply to Resp. to Def.'s Mot. to Strike, Apr. 11, 2022, ECF No. 22 ("Reply to Resp. to Def.'s Objections"), part of the briefing for the motions for summary judgment. See Chief U.S. District Judge David C. Nye, Mot. Practice, available at https://www.id.uscourts.gov/district/judges/nye/Motion_Practice.cfm (last accessed Sept. 7, 2022).

**MEMORANDUM DECISION - 3**

heard oral argument. See Order, July 15, 2022, ECF No. 29; Minute Entry, July 21, 2022, ECF No. 30 ("Oral Arg.").

The following facts are not in dispute.[5] Koby Clark was the adult son of James and Krista Clark and was married to Defendant. PSOF ¶ 1; DSOF ¶¶ 1–2. Defendant and Koby Clark lived with Koby Clark's parents in Kuna, Idaho until the summer of 2017. See PSOF ¶ 2; DSOF ¶ 3. In the summer of 2017, Defendant and Koby Clark moved to an apartment in Bozeman, Montana (the "Bozeman Apartment") so Defendant could attend Montana State University. PSOF ¶ 2; DSOF ¶ 3. Defendant and Koby Clark intended to remain in Montana until Defendant finished school. PSOF ¶ 10; see DSOF ¶ 5. After relocating to Bozeman, Koby Clark and Defendant made several trips to Idaho. PSOF ¶¶ 12–13; DSOF ¶ 13. In April 2018, Koby Clark began working for Storm Creek Outfitters. DSOF ¶ 14. In mid-April, he spent a couple days at the Bozeman Apartment. PSOF ¶ 9; DSOF ¶ 17. On or around May 21, 2018, Koby Clark was the passenger in a vehicle owned by Storm Creek Outfitters

---

[5] Pursuant to Dist. Idaho L. Rule 7.1(b)(1), in addition to complying with Federal Rule of Civil Procedure 56(c)(1) the moving party "shall file a separate statement of all material facts, . . . which the moving party contends are not in dispute." Dist. Idaho L. Rule 7.1(b)(1). The responding party "must also file a separate statement, . . . of all material facts which the responding party contends are in dispute." Id. 7.1(c)(2). Both parties filed statements of material facts not in dispute, see Statement of Material Facts, Pursuant to Dist. Idaho Loc. Civ. R. 7.1(b)(1), Jan. 31, 2022, ECF No. 13-1 ("PSOF"); Statement of Undisputed Facts, Jan. 31, 2022, ECF No. 14-1 ("DSOF"); however, only Defendant filed a statement of disputed facts. Disputed Facts. At oral argument, counsel for State Farm confirmed that State Farm did not dispute any of the facts in Defendant's Statement of Facts. Oral Arg. at 12:26–13:31 ("I didn't see a purpose in filing a [statement of disputed facts] because I don't think . . . we had a significant reason to dispute what [Defendant] proposed to the Court"). Facts contained in the PSOF and DSOF, not disputed by the parties, are deemed undisputed for the purpose of this Memorandum Decision. Fed. R. Civ. Pro. 56(e)(2).

**MEMORANDUM DECISION - 4**

which was involved in a single vehicle accident resulting in his death. PSOF ¶ 14; DSOF ¶¶ 20–21. The vehicle and driver of the vehicle were uninsured. PSOF ¶ 17; DSOF ¶ 22. At the time of Koby Clark's passing, State Farm had issued one insurance policy to James and Koby Clark, the 073 Policy, and the Disputed Policies to James and Krista Clark. PSOF ¶¶ 15–16; DSOF ¶ 22. All four policies had UM and UIM motorist coverage limits of $100,000 and $300,000 respectively. PSOF ¶¶ 15–16.

The UM provisions of the Disputed Policies "only require State Farm to make payment for bodily injuries suffered by an insured." Id. ¶ 21. For the purpose of UM coverage, the Disputed Policies define "insured" as follows:

> Insured means:
> 1. you;
> 2. resident relatives;
> 3. any other person while occupying:
>    a. your car;
>    b. a newly acquired car; or
>    c. a temporary substitute car.
>       Such vehicle must be used within the scope of your consent. Such other person occupying a vehicle used to carry persons for a charge is not an insured; and
> 4. any person entitled to recover compensatory damages as a result of bodily injury to an insured as defined in items 1., 2., or 3. above.
>    . . .
> Resident Relative means a person, other than you, who resides primarily with the first person listed as named insured on the Declarations Page and who is:
>
> 1. related to that named insured or his or her spouse by blood, marriage, or adoption, including an unmarried and unemancipated child of either who is away at school and otherwise maintains his or her primary residence with that named insured; or
> 2. a ward or a foster child of that named insured, his or her spouse, or a person described in 1. above.

**MEMORANDUM DECISION - 5**

PSOF ¶ 22 (emphases removed); DSOF ¶ 25 (emphases removed); see also Certified Policy Record [067 Policy] at SF000128–29, Jan. 31, 2022, ECF No. 13-5; Certified Policy Record [075 Policy] at SF000172–73, Jan. 31, 2022, ECF No. 13-5; Certified Policy Record [050 Policy] at SF000218–19, Jan. 31, 2022, ECF No. 13-5.

On March 16, 2021, Defendant provided a statement under oath regarding Koby Clark's residency at the time of the accident. Remote Examination Under Oath of McKenna Clark, Mar. 16, 2021, ECF No. 13-6.

## JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction over "all civil actions where the matter in exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a). When deciding questions of substantive law in diversity cases, federal courts are bound by state court decisions and state statutes. Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); see also Guar. Tr. Co. of New York v. York, 326 U.S. 99, 109–12 (1945). "In a diversity case, where the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it." Air-Sea Forwarders, Inc. v. Air Asia Co., 880 F.2d 176, 186 (9th Cir. 1989) (quoting Dimidowich v. Bell & Howell, 803 F.2d 1473, 1482 (9th Cir. 1986), modified, 810 F.2d 1517 (9th Cir. 1987)) (internal quotation marks omitted). The Court may look to "well-reasoned decisions from other jurisdictions" when predicting how the state's highest court would decide an issue. Takahashi v. Loomis Armored Car Serv., 625 F.2d 314, 316 (9th Cir. 1980). When deciding questions of procedural law, federal courts apply the appropriate federal rule. Hanna v. Plumer, 380 U.S. 460, 471–74 (1965).

MEMORANDUM DECISION - 6

The Court will grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Munden v. Stewart Title Guar. Co., 8 F.4th 1040, 1044 (9th Cir. 2021). The movant bears the initial burden of establishing there is no genuine dispute of material fact. Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 987 (9th Cir. 2006). If established, the burden shifts to the nonmovant to establish there is a genuine issue for trial by setting forth specific facts, by affidavit or otherwise. Id.; Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). "A fact is material if it could affect the outcome of the suit under the governing substantive law." Miller, 454 F.3d at 987. The Court considers "the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each" when presented with cross-motions for summary judgment. Tulalip Tribes of Wash. v. Washington, 783 F.3d 1151, 1156 (9th Cir. 2015) (quoting Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two, 249 F.3d 1132, 1134 (9th Cir. 2001)) (internal quotation marks omitted). The Court must consider the cited materials but may consider other materials in the record in addition to the cited materials. Fed. R. Civ. P. 56(c)(3).

## DISCUSSION

**I.   Defendant's Objections to Supporting Evidence**

Defendant objects to the inclusion of, and reference to, Exhibit Four of the Declaration of Michael Gianquitto ("Exhibit Four") as inadmissible settlement

**MEMORANDUM DECISION - 7**

negotiations under Idaho Rule of Evidence 408,[6] Def. Resp. at 14–15; Idaho R. Evid. 408; see generally Decl. Michael Gianquitto in Supp. of [Pl. Mot.] at Ex. 4, dated Jan. 19, 2022, ECF No. 13-5 ("Gianquitto Decl."), and "a number of speculative statements made by [James] Clark, [Krista] Clark, and even [Defendant] regarding topics for which none can competently testify," as inadmissible under Idaho Rule of Civil Procedure 56(e).[7] Def. Resp. at 15–16 (listing statements). For the following reasons, the Court strikes portions of Exhibit Four and certain statements made by James and Krista Clark and declines to strike certain statements made by Defendant.

Defendant characterizes State Farm's inclusion and reliance on Exhibit Four as "an obvious ploy . . . to impeach or otherwise undermine [Defendant's] argument that Koby [Clark] was a 'resident relative' of his parents' house."[8] Id. at 14. State Farm acknowledges that Exhibit Four contains settlement discussions but asserts Exhibit Four is admissible because it is not being used to prove liability or the amount

---

[6] Defendant bases her objections on the Idaho Rules of Evidence; see Def. Resp. at 11–16; however, evidentiary rules are procedural, rather than substantive; therefore, the Court is bound by the Federal Rules of Evidence. Hanna, 380 U.S. at 471–74; Orr v. Bank of Am., NT & SA, 285 F.3d 764, 772 (9th Cir. 2002). There is significant linguistic overlap between Idaho Rule of Evidence 408 and Federal Rule of Evidence 408, compare Idaho R. Evid. 408 with Fed. R. Evid. 408; thus, the Court interprets Defendant's objections under Idaho Rule of Evidence 408 as objections under Federal Rule of Evidence 408.

[7] Defendant bases her objections on the Idaho Rules of Civil Procedure. See Def. Resp. at 11–16. In diversity actions, procedural issues are governed by the Federal Rule of Civil Procedure. Hanna, 380 U.S. at 471–74. There is significant linguistic overlap between Idaho Rule of Civil Procedure Rule 56 and Federal Rule of Civil Procedure Rule 56, compare Idaho R. Civ. P. with Fed. R. Civ. P. 56; thus, the Court interprets Defendant's objections under Idaho Rule of Civil Procedure 56 as objections under Federal Rule of Civil Procedure 56.

[8] Defendant initially also objected to the inclusion of Exhibits 1–3 of the Gianquitto Declaration but abandoned her argument to strike Exhibits 1–3 of the Gianquitto Declaration at oral argument. Oral Arg. 37:14–21.

**MEMORANDUM DECISION - 8**

of damages, it is only being used to provide the Court with "information regarding how [Defendant]'s agent characterized her relationship with Koby [Clark], and their living arrangements." Resp. to Def.'s Objections at 4.

In the context of summary judgment proceedings, evidentiary rulings are within the discretion of the Court. Domingo ex rel. Domingo v. T.K., 289 F.3d 600, 605 (9th Cir. 2002). A party may object to cited material supporting or disputing a fact on the grounds that the fact "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. Pro. 56(c)(2). Federal Rule of Evidence 408 prohibits the admission of "statement[s] made during compromise negotiations about the claim" used "to prove or disprove the validity or amount of a disputed claim or to impeach by prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a). However, the Court may admit such evidence for another purpose. Id. 408(b). The purpose of Federal Rule of Evidence 408 is to further public policy favoring the compromise and settlement of disputes outside of Court by protecting those statements from use in Court. Id. Notes of Advisory Comm. on Proposed Rules.

On January 18, 2019, "State Farm extended the UM 'per person' policy limit ($100,000) to [Defendant] under the 073 Policy." PSOF ¶ 18. On February 27, 2019, Andrew J. Miller of Odegaard Braukmann Law, PLLC, representing Defendant, sent a demand letter to State Farm "requesting a second 'per person' policy limit under the 073 Policy for a negligent infliction of emotional distress claim for [Defendant]." Id. ¶ 19; see generally Gianquitto Decl. at Ex. 4. The demand letter contained information characterizing the nature of Defendant and Koby Clark's relationship as required by Montana's law governing negligent infliction of emotional distress

**MEMORANDUM DECISION - 9**

claims.[9] See id. at SF00080–84. Here, statements in that demand letter are being offered to show that Koby Clark did not consider himself to be a resident of Idaho and thus to show that the claim is not valid. As a result, the statements are inadmissible under Federal Rule of Evidence 408 and the Court strikes them. See United States v. Contra Costa Cnty. Water Dist., 678 F.2d 90, 92 (9th Cir. 1982) (holding that evidence of settlement negotiations between the plaintiff and a third party was inadmissible); see, e.g., United States v. Quality Built Const., 358 F.Supp. 2d 487, 490 (E.D.N.C. 2005) (holding evidence of a consent decree reached in an unrelated case was inadmissible). Therefore, the entirety of subsection one of the Factual Background titled "Koby and McKenna's Relationship," Gianquitto Decl. at SF000076–77, paragraph one of subsection two of the factual background titled "The Accident" beginning with the sentence "[a]s soon as Koby was hired," id. at SF000077, sentence one of paragraph two, the entirety of paragraphs three, four, six, seven, nine, ten, and 11, id. at SF000077–78, the entirety of paragraphs one and two of subsection three of the factual background titled "The Aftermath," id. at SF000079, and the entirety of subsection three of the Analysis section titled "McKenna's Individual NIED Claim," id. at SF000084–85, are stricken from Exhibit Four. Any facts supported by the stricken portions of Exhibit Four, used to dispute Koby Clark's primary residence at the time of the accident. are also stricken.[10] See, e.g., PSOF ¶¶ 7, 19(a)–(e).

---

[9] The claim for negligent infliction of emotional distress "was denied based on Idaho law and reasons not relevant in this proceeding." PSOF ¶ 20.

[10] The Court does not strike State Farm's reliance on Exhibit Four to support that "on February 27, 2019, A.J. Miller sent a letter to State Farm requesting a second

The Court also strikes several statements made by James and Krista Clark pertaining to Koby Clark's plans to return to Idaho and where he considered his residence to be at the time of the accident, see Def. Resp. at 15–16 (identifying statements), because the statements lack foundation. Affidavits or declarations used to support or oppose a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge on the matter." Fed. R. Evid. 602. Although James and Krista Clark were Koby Clark's parents, Koby Clark was a married adult who had moved away from their home. DSOF ¶¶ 1–3. State Farm has not provided sufficient evidence that Koby Clark's relationship with his parents was such that his parents would have personal knowledge about where he considered his residence to be or whether he intended to return to Idaho. See Decl. James Clark Supp. Pl.'s Mot. Summ. J. ¶ 1, Jan. 31, 2022, ECF No. 13-3 ("James Clark Decl."); Remote Examination Under Oath of James Clark at 16–17 (testifying that he could not "definitely" say what Koby Clark's plans were regarding his living

---

'per person' policy limit under the 073 Policy for a negligent infliction of emotional distress claim for [Defendant]." PSOF ¶ 19. In the quoted language of paragraph 19, State Farm relies on Exhibit Four only to assert that it received a demand letter, not to prove or disprove the claim, or impeach Defendant by prior inconsistent statement or contradiction. State Farm's purpose is proper under Federal Rule of Evidence 408(b). Similarly, the Court does not strike paragraph six of the PSOF or State Farm's reliance on Exhibit Four in support of the fact that Koby Clark began working at Storm Creek Outfitters. Not only is State Farm's reliance on Exhibit Four permissible under Federal Rule of Evidence 408(b), but the fact is undisputed. Compare PSOF ¶ 6 with DSOF ¶ 14.

**MEMORANDUM DECISION - 11**

situation after October 2018), 20–21 (testifying Koby Clark called his parents, brother, and wife weekly), dated Mar. 11, 2021, ECF No. 13-3; Decl. Krista Clark Supp. Pl.'s Mot. Summ. J. ¶ 1, Jan. 31, 2022, ECF No. 13-4 ("Krista Clark Decl.").

The Court does not strike the statement of Defendant.  Defendant asks the Court to strike her statement under oath that Koby Clark "would probably say that he lived in Bozeman with me," Remote Examination Under Oath of McKenna Clark at 14, Mar. 16, 2021, ECF No. 13-6, if asked where he lived while out with Defendant and friends.  Def. Resp. at 16.  It is undisputed that Defendant and Koby Clark were married and shared the Bozeman Apartment.  PSOF ¶¶ 2–3; DSOF ¶¶ 1–3.  As his wife, and the person with whom he shared the Bozeman Apartment, Defendant has sufficient personal knowledge to testify about where Koby Clark considered his residence to be at the time of the accident.  See Fed. R. Evid. 602.

## II.     Resides Primarily

Coverage under the Disputed Policies hinges upon whether Koby Clark was a "resident relative" under the UM provisions of the Disputed Policies at the time of the accident.  State Farm argues that Koby Clark was not a resident relative because he did not reside primarily with James Clark at the time of the accident.  Pl. Br. at 12–14.  Defendant argues that Koby Clark did reside primarily with James Clark; therefore, Defendant is entitled to recover under the Disputed Policies because Koby Clark was a resident relative.  Def. Br. at 6–8.  The Disputed Policies do not cover Koby Clark because he did not reside primarily with James Clark at the time of the accident.  The Disputed Policies define "resident relative" as "a person, other than you, who resides primarily with the first person listed as named insured on the

Declarations Page." Certified Policy Record [067 Policy] at SF000128, Jan. 31, 2022, ECF No. 13-5; Certified Policy Record [075 Policy] at SF000172, Jan. 31, 2022, ECF No. 13-5; Certified Policy Record [050 Policy] at SF000218, Jan. 31, 2022, ECF No. 13-5. Although Defendant asserts that the words "resides," and "primarily" are ambiguous, undefined terms in the relevant policies, Def. Br. at 3–5, the phrase resides primarily only has one meaning in this context. The Court grants State Farm's motion for summary judgment and denies Defendant's motion for summary judgment.

"Insurance policies are a matter of contract between the insurer and the insured." Gordon v. Three Rivers Agency, Inc., 903 P.2d 128, 130 (Idaho Ct. App. 1995) (citing Brinkman v. Aid Ins. Co., 766 P.2d 1227, 1233 (Idaho 1988), overruled on other grounds by Greenough v. Farm Bureau Mut. Ins. Co. of Idaho, 130 P.3d 1127 (Idaho 2006)); see also, e.g., Neill v. Minn. Life Ins. Co., No. 10-144-S-REB, 2011 WL 2182573 at *5 (D. Idaho June 3, 2011). In interpreting insurance policy provisions, "where the policy language is clear and unambiguous, coverage must be determined, as a matter of law, according to the plain meaning of the words used." Farm Bureau Mut. Ins. Co. of Idaho v. Eisenman, 286 P.3d 185 (Idaho 2012) ("Eisenman") (quoting Cascade Auto Glass, Inc. v. Idaho Farm Bureau Ins. Co., 115 P.3d 751, 754 (Idaho 2005)) (internal quotation marks omitted). Furthermore, "unless a contrary intent is shown, common, non-technical words are given the meaning applied by laymen in daily usage." AID Ins. Co. Mut. v. Armstrong, 811 P.2d 507, 510 (Idaho Ct. App. 1991) ("Armstrong"). An insurance policy provision is ambiguous "if it is reasonably subject to conflicting interpretations." Eisenman, 286 P.3d at 189 (quoting Cherry v.

**MEMORANDUM DECISION - 13**

Coregis, 204 P.3d 522, 524 (Idaho 2009)) (internal quotation marks omitted). Where there is ambiguity, the Court may look to dictionary definitions of the ambiguous term(s) and apply the meaning which provides the most coverage for the insured. See MacLeod v. Stelle, 249 P. 254, 256 (Idaho 1926); Cherry v. Coregis, 204 P.3d at 524; see, e.g., Poland v. Martin, 761 F.2d 546, 548 (9th Cir. 1985) (interpreting California law).

The phrase "resides primarily" as used in the Disputed Policies means the dwelling where a person is physically present most of the time and with which a person has the closest continuing connection at the time of the triggering event for coverage by the policy. The Idaho Supreme Court has not interpreted the phrase "resides primarily" in the context of insurance policies and the Disputed Policies do not define the phrase "resides primarily." The phrase "resides primarily" is a common, non-technical phrase, and nothing in the Disputed Policies suggests the phrase is intended to have a meaning contrary to the laymen understanding of the phrase. Therefore, unless the phrase "resides primarily" is reasonably subject to two different meanings, the common meaning of the phrase will prevail.

"Resides" is a present tense verb. It signifies an action that is limited temporally; one taken in the present.[11] According to Cambridge Dictionary, "reside"

---

[11] The use of "resides" in examples provided by dictionaries also suggests that resides has a temporal quality determined by its context. See, e.g., MERRIAM-WEBSTER'S DICTIONARY, available at https://www.merriam-webster.com/dictionary/resides (last accessed Sept. 7, 2022) ("She resides at 15 Maple Street," "[h]e resides in St. Louis," and "[h]e still resides at his parents' house." (emphases in original)); Reside, CAMBRIDGE DICTIONARY, available at https://dictionary.cambridge.org/us/dictionary/english/reside (last accessed Sept. 7, 2022) ("The family now resides in southern France").

**MEMORANDUM DECISION - 14**

is a verb usually followed by an adverb or prepositional phrase meaning "to live, have your home, or stay in a place" or "to live in a place."[12]

The word "primarily" is an adverb further limiting the verb resides. Although as Defendant argues one can point to two meanings of the word "primarily", i.e., "mainly," or "in the first place: originally,"[13] Def Br. at 4–5, only the former meaning makes sense when "primarily" is used to modify the present tense verb "resides." To argue that the phrase could mean where one presently lives first would be a contradiction in terms. Functioning as an adverb modifying "resides" in the UM

---

[12] Reside, CAMBRIDGE DICTIONARY, available at https://dictionary.cambridge.org/us/dictionary/english/reside (last accessed Sept. 7, 2022); see also Reside, MERRIAM-WEBSTER'S DICTIONARY, available at https://www.merriam-webster.com/dictionary/resides (last accessed Sept. 7, 2022) (defining "reside" as "to dwell permanently or continuously: occupy a place as one's legal domicile."); Reside, OXFORD ENGLISH DICTIONARY, available at https://www.oed.com/view/Entry/163557?rskey=aASwhm&result=2#eid (last accessed Sept. 7, 2022) (defining "reside" as "[t]o dwell permanently or for a considerable time, to have one's settled or usual home in or at a particular place" and noting the definition is commonly used (emphases in original)); Reside, BLACK'S LAW DICTIONARY available at https://thelawdictionary.org/reside/ (last accessed Sept. 7, 2022) (defining "reside" as "to live somewhere such as a town or state"); Reside, Dictionary.com, available at https://www.dictionary.com/browse/reside (last accessed Sept. 7, 2022) ("Dictionary.com") (defining "reside" as "1. to dwell permanently or for a considerable time: 2. of things, qualities, etc. to abide, lie, or be present habitually").

[13] See also Primarily, MERRIAM-WEBSTER'S DICTIONARY, available at https://www.merriam-webster.com/dictionary/primarily (last accessed Sept. 7, 2022) (defining "primarily" as "for the most part: chiefly" and "in the first place: originally"); Primarily, OXFORD ENGLISH DICTIONARY, available at https://www.oed.com/view/Entry/151277?redirectedFrom=primarily#eid (last accessed Sept. 7, 2022) (defining primarily as "[t]o a great or the greatest degree; for the most part, mainly" and "[a]t first, in the first instance; originally"); Primarily, CAMBRIDGE DICTIONARY, available at https://dictionary.cambridge.org/us/dictionary/english/primarily (last accessed Sept. 7, 2022) (defining "primarily" as "mainly"); Primarily, Dictionary.com, available at https://www.dictionary.com/browse/primarily (last accessed Sept. 7, 2022) (defining "primarily" as "1 essentially; mostly; chiefly; principally: 2 in the first instance; at first; originally:").

**MEMORANDUM DECISION - 15**

provisions of the Disputed Policies, "primarily" expresses the degree to which an individual must reside with the named insured to receive coverage under the Disputed Policies.  Combined with the temporal nature of "resides," the only reasonable interpretation of the phrase "resides primarily," when read in the context of the UM provisions of the Disputed Policies, is the dwelling where a person is physically present most of the time and with which a person has the closest continuing connection at the time of the triggering event for coverage by the policy. The policy language excepting an "unmarried and unemancipated child . . . who is away at school and otherwise maintains his or her primary residence with that named insured" supports this interpretation.  The Disputed Policies provide that:

> Resident Relative means a person, other than you, who resides primarily with the first person listed as named insured on the Declarations Page and who is:
>
> 1. related to that named insured or his or her spouse by blood, marriage, or adoption, including an unmarried and unemancipated child of either who is away at school and otherwise maintains his or her primary residence with that named insured; or
> 2. a ward or a foster child of that named insured, his or her spouse, or a person described in 1. above.

Certified Policy Record [067 Policy] at SF000128, Jan. 31, 2022, ECF No. 13-5; Certified Policy Record [075 Policy] at SF000172, Jan. 31, 2022, ECF No. 13-5; Certified Policy Record [050 Policy] at SF000218, Jan. 31, 2022, ECF No. 13-5.  The exception for children away at school acknowledges that such children would not otherwise meet the definition of "resides primarily."  By excepting such children, so long as they "otherwise maintain[] [their] primary residence with that named insured," the policy language clarifies that the phrase resides primarily ordinarily means where someone lives most at the time of the triggering event.

**MEMORANDUM DECISION - 16**

Case law from other jurisdictions supports interpreting the phrase "resides primarily" to mean the dwelling where a person lives most of the time and with which a person has the closest continuing connection at the time of the triggering event. In Bonich v. State Farm Mut. Auto. Ins. Co., the Florida District Court of Appeals upheld the lower court's finding that the son of the insured did not reside primarily with the insured at the time of the accident where the policy at issue provided coverage for a "relative" "who resides primarily with [the insured.]" 996 So.2d 942, 944 (Fla. Dist. Ct. App. 2008). Distinguishing the phrase "resides primarily" from "resident of an insured's household" the Bonich court explained that a relative of the insured may have multiple residences at the time of the triggering event, but when a policy uses the phrase "resides primarily," coverage is determined by the "quantity of time that the relative actually lives with the named insured." Id. at 945. In Bonich, the son of the insured had been thrown out of the insured's home prior to the triggering event, and the Florida District Court of Appeals declined to extend coverage to "relatives who might have lived primarily with the named insured at some point the past but who have since moved on." Id. at 945.

Similarly, courts have declined to extend coverage to an individual who has moved out of the insured's home but intended to return. In Bauer v. USAA Cas. Ins. Co., the Wisconsin Court of Appeals declined to extend coverage to an insured's son where the UIM policy extended to "relatives" defined as "a person related to you or your spouse by blood, marriage or adoption who resides primarily with you. It includes your unmarried and unemancipated child away at school." 720 N.W.2d 187, 189 (Wis. Ct. App. 2006). In Bauer, the insured's son moved away from home to

**MEMORANDUM DECISION - 17**

attend basic training for the United States Navy and was stationed in Mississippi at the time of the triggering event but intended to return to his mother's home in Wisconsin at the conclusion of his five-year enlistment period. Id. at 188. The Wisconsin Court of Appeals explained that the phrases "resident of the same household" and "resides primarily" in insurance policies have different meanings. Id. at 189. Although an individual may be a resident of more than one household for insurance purposes, it is impossible to "primarily reside in two households at the same time." Id. at 190; see also, e.g., Wallace v. State Farm Mut. Ins. Co., Sixth Dist. Fulton No. F-07-012, 2007-Ohio-6373 ¶¶ 16–19 (holding same and collecting cases).

Here, the evidence does not show that Koby Clark resided primarily with James Clark in Idaho at the time of the accident. Instead, the evidence shows Koby Clark had moved out of James Clark's home and signed a lease for the Bozeman Apartment with Defendant and James Clark. DSOF ¶¶ 1–3. He was also employed by Storm Creek Outfitters, spending large amounts of time in the forest. DSOF ¶ 14; PSOF ¶ 8. Although James Clark maintained a bedroom in his home for Koby Clark, his home was between 477 and 485 miles from the Bozeman Apartment, and between 337 and 523 miles from Koby Clark's place of employment.[14] PSOF ¶¶ 3 n.3, 6. Koby Clark made short and irregular visits to Idaho following his move to Montana. See DSOF ¶13; PSOF ¶¶ 12–13; James Clark Decl. ¶ 7; Krista Clark Decl. ¶ 5. These facts do not indicate that he was physically present at James Clark's home most of

---

[14] The Court takes judicial notice of the distances between Koby Clark's place of employment and James Clark's home and between the Bozeman apartment and James Clark's home. Fed. R. Evid. 201; see generally PSOF ¶¶ 3 n.3, 6.

**MEMORANDUM DECISION - 18**

the time when the accident occurred.[15] Indeed, Koby Clark's parents stated that he was not residing at their home full-time or part-time at the time of the accident, James Clark Decl. ¶¶ 3–4; Krista Clark Decl. ¶¶ 4–5, and Defendant testified that if asked, Koby Clark would probably tell others that he lived with her in Bozeman. PSOF ¶ 25. The last time Koby Clark spent time at James Clark's home was March 2018, approximately two months before the accident. Id. ¶ 12. The purpose of his visit was to pick up his hunting gear to begin his new job at Storm Creek Outfitters. Id.; Krista Clark Decl. ¶ 5. He did not have plans to return to James Clark's home until later in May 2018 for his brother's graduation, DSOF ¶ 18, and spent any free time he had when he was not working at the Bozeman Apartment, not at James Clark's home. James Clark Decl. ¶ 6; see Decl. of Stephen L. Adams at Ex. 1 p. 12, Jan. 31, 2022, ECF No. 13-6 (statement by Defendant that Koby Clark would have returned to the Bozeman Apartment, not James Clark's residence, if he had time between clients). Although Koby Clark may have intended to return to Idaho at some point in the future, his future intent does not speak to where he was physically present most of the time at the time of the accident. See Bauer, 720 N.W.2d 187.

Finally, both parties dedicate significant portions of their briefs to cases in which Idaho courts interpret the words "resident" or "household" in insurance policies. See, e.g., Def. Br. at 5–8; Pl. Br. at 6–9; Def. Resp. at 5–9. The parties rely

---

[15] That Koby Clark had some of his mail sent to James Clark's home and listed James Clark's address on his official documents including his car insurance, car and voter registration, and his guiding license are not enough to support a determination that Koby Clark resided primarily at James Clark's home at the time of the accident because those facts do not establish Koby Clark's physical presence at James Clark's home most of the time immediately prior to the accident.

**MEMORANDUM DECISION - 19**

mainly on <u>Allstate Ins. Co. v. Mocaby</u>, 990 P.2d 1204 (Idaho 1999) (interpreting the terms "resident" and "household"); <u>Armstrong</u>, 811 P.2d 507 (Idaho Ct. App. 1991) (same); and <u>Farm Bureau Ins. Co. of Idaho v. Kinsey</u>, 234 P.3d 739 (Idaho 2010) (interpreting the phrase "resident") to argue whether Koby Clark was a resident of James Clark's home at the time of the accident. However, because the policy language at issue in the instant case is "resides primarily," and not "resident" or "household," the cases cited by the parties are inapposite and their application to the facts of this case is unpersuasive.

## CONCLUSION

In light of the foregoing, State Farm's motion for summary judgment is granted and Defendant's motion for summary judgment is denied. The Court will enter a separate judgment in accordance with Federal Rule of Civil Procedure 58.

/s/ Claire R. Kelly<br>Claire R. Kelly, Judge*

Dated: September 7, 2022
New York, New York

---

* Judge Claire R. Kelly, of the United States Court of International Trade, sitting by designation.

**MEMORANDUM DECISION - 20**